**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **EDWIN S. WIDMER and HEATHER WIDMER,** *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> *v.* <br><br> **WELTMAN WEINBERG & REIS CO., LPA**, <br><br> Defendant. | **CIVIL ACTION** <br><br> **NO. 22-01323-KSM** |

<u>**MEMORANDUM**</u>

MARSTON, J.                                                                                      December 15, 2022

Plaintiffs Edwin and Heather Widmer allege that Defendant Weltman, Weinberg & Reis Co., LPA ("Weltman") violated § 1692e and § 1692f[1] the Fair Debt Collection Practices Act ("FDCPA") when it garnished their joint bank account despite knowing it contained entireties property immune from execution under Pennsylvania law.  (Doc. No. 1.)  Weltman answered the Complaint (Doc. No. 5), and then moved for judgment on the pleadings (Doc. No. 11).  For the reasons discussed below, the motion is granted.

I.      **BACKGROUND**

*A.      Factual Background*

The facts, viewed in the light most favorable to the Widmers, are as follows.

Edwin Widmer defaulted on a debt owed to creditor Discover Bank, and the bank referred the debt to Weltman for collections.  (Doc. No. 1 ¶¶ 7–12.)  Weltman, acting on behalf

---

[1] The Widmers also assert a violation of §1692d in their Complaint (Doc. No. 1 ¶ 34), but they do not address this subsection in their opposition brief (*see generally* Doc. No. 12).

of Discover Bank, filed suit against Edwin in the Magisterial District Court of Bucks County, Pennsylvania, and on August 6, 2014, the court entered judgment in Discover Bank's favor.[2] (*Id.* ¶12.)  In late 2018, the judgment was transferred to the Court of Common Pleas for Bucks County, and Weltman filed a Praecipe for Writ of Execution asking the prothonotary of that court to order the sheriff of Bucks County:  (1) "to levy upon the property of [Edwin S. Widmer] and to sell [his] interest therein," and (2) "to attach" funds held in Edwin's bank account at Wells Fargo Bank.  (*Id.* at ¶ 13; *see also* Doc. No. 1-1 at 2–3 (identifying Wells Fargo as the garnishee).)

The Court of Common Pleas issued the writ on February 16, 2022.  (Doc. No. 1-1 at 4.) It enjoined Wells Fargo from paying out any funds in accounts in Edwin's name, with the exception of funds subject to certain as-of-right exemptions under federal and state law.[3]  (*Id.* at 3.)  The writ, which Wells Fargo was obligated to serve on Edwin, included three attachments. The first outlined the "major exemptions under Pennsylvania and federal law" and noted that Edwin may be able to rely on "other exemptions as may be provided by law."  (*Id.* at 4.)  The second, a notice, explained that the writ could "cause [Edwin's] property to be held or taken to pay the [outstanding] judgment," and that there are exemptions to garnishment, "which may be applicable to [him]."  (*Id.* at 3–5.)  To the extent Edwin wished to assert one or more of those exemptions, the notice directed him to complete the final attachment, a form letter titled, "Claim

---

[2] Edwin is included on the "Participant List" issued by that court along with his address in Levittown, Pennsylvania.  (*See* Doc. No. 1-1 at 11; *see also* Doc. No. 12 at 7 (the Widmers describing the Levittown address as the address "certified as Mr. Widmer's in the judgment docketed in Bucks County").)

[3] Specifically, the writ excluded funds in an account "(i) in which funds are deposited electronically on a recurring basis and are identified as being funds that upon deposit are exempt from execution, levy or attachment under Pennsylvania or federal law, or (ii) that total $300 or less."  (Doc. No. 1-1 at 3.)

for Exemption. (*Id.* at 5; *see also id.* (warning him that he "should take this paper to [his] lawyer at once"). The Claim for Exemption is a two-page form letter from the debtor to the sheriff, and the debtor may use it to claim any known exemption(s) or request an exemption hearing. (*Id.* at 6–7.)

The list of major exemptions, the notice, and the Claim for Exemption form (collectively, the "Attachments"),[4] along with the writ itself, were posted on the docket in the Court of Common Pleas.[5] (*See* Doc. No. 1-1 at 2–7.) And on February 28, 2022, a deputy with the Office of the Sheriff of Bucks County served Wells Fargo with copies of the documents. (*Id.* at 8.) The service form completed by the sheriff's office shows that a bank manager with Wells Fargo accepted service on behalf of the bank and Edwin. (*Id.* ("Served bank manager who accepted service for deft.").) As mentioned above, Pennsylvania's garnishment rules require garnishees, like Wells Fargo, to serve a copy of the writ and the Attachments on debtor-defendants, like Edwin. *See* Pa. R. Civ. P. 3140(a) ("Upon being served with the writ, the garnishee shall promptly forward a copy to the defendant."), (c) ("A copy is forwarded within the requirement of this rule when it is delivered to the defendant by an adult at any place within or without the Commonwealth in the manner prescribed by Rule 402(a) for service of original

---

[4] Per Pennsylvania Rule of Civil Procedure 3252(a), Weltman was required to include the Attachments with the proposed writ that was ultimately signed by the prothonotary. Pa. R. Civ. P. 3252(a) ("The writ of execution shall include a notice to the defendant, a summary of major exemptions, and a claim for exemption, and shall be substantially in the [ ] form" outlined in the Rule.). The Attachments were in all important respects identical to the examples given in Rule 3252(a).

[5] To their Complaint, the Widmers attach copies of Weltman's Praecipe for Writ of Execution (Doc. No. 1-1 at 2), the Writ of Execution signed by the Prothonotary (*id.* at 3–4), the Writ of Execution Notice (*id.* at 5), and the blank "Claim for Exemption" form (*id.* at 6–7)—all of which include a stamp in the margin confirming that they were electronically filed with the Court of Common Pleas. The Widmers also attach copies of the sheriff's confirmation of service on Wells Fargo (*id.* at 8), the magisterial court's "Notice of Judgment" against Edwin Widmer (*id.* at 9–11), the magisterial court's "Civil Action Hearing Notice," notifying Edwin Widmer of the default hearing (*id.* at 12), and a copy of the civil complaint filed by Weltman in magisterial court (*id.* at 13.) These documents are collectively labeled "Exhibit A" to the Complaint (*Id.* at 1.)

process or when it is mailed to the defendant by registered mail directed to the defendant's last known address.").[6]

As required by the writ, Wells Fargo attached the funds held in Edwin's account, which the Widmers allege resulted in "hundreds of dollars in unnecessary [bank] fees." (Doc. No. 1 at ¶ 15.) The Widmers argue that the funds were immune from execution because the bank account was a joint account that Edwin maintained with his wife, Heather. (*Id.* at ¶ 14.) The Widmers allege, on "information and belief," that Weltman "knew or reasonably should have known" that the funds in the joint account were immune from execution because it "performed its own private asset search to discover" the account.[7] (*See id.* ¶ 18.) The Widmers suggest that Weltman performed this "private asset search" instead of conducting pre-execution discovery "in conformity with the Rules of Civil Procedure." (*Id.* ¶ 18; *see also id.* ¶ 17 (citing Pennsylvania Rule of Civil Procedure 3117); *id.* ¶ 19 ("None of these fees would have been incurred had Weltman . . . conducted itself in accordance with the Pennsylvania Rules of Civil Procedure.").)

---

[6] In their response to Weltman's motion to dismiss, the Widmers argue that "[t]here is no record on the docket that this document was served on Edwin Widmer." (Doc. No. 12 at 5 (arguing that "Weltman did not" serve Edwin Widmer).) But *Wells Fargo*, not Weltman, was legally required to send Edwin a copy of the writ and the Attachments. *See* Pa. R. Civ. P. 3140. The Widmers have not alleged that Edwin never received the documents; to the contrary, their briefing suggests he received notice and contested garnishment at an exemption proceeding. (*See* Doc. No. 12 at 6; Draft H'rg. Tr. at 16:24–17:5 (Plaintiffs' counsel confirming that the Widmers challenged the garnishment through an exemption hearing).)

[7] Defense counsel argues that the Court should not consider this allegation because "there is no plausible explanation for that averment" and it "is just upon information and belief of counsel." (Draft H'rg Tr. at 4:20–5:7.) But a plaintiff may plead upon information and belief when "it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control" and "plaintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 268 (3d Cir. 2016) (quotation marks omitted). The Court need not consider whether that standard is satisfied here because even taking the allegation as true, the Widmers have failed to state a plausible claim under the FDCPA.

### B.      Procedural History

On April 6, 2022, the Widmers filed their Complaint in this case, contending that Weltman violated § 1692e of the FDCPA in its "communications to [the Widmers] that it had the right to take entireties funds from an account jointly held by spouses to satisfy an individual judgment against only one of the account holders," and that it violated § 1692f of the FDCPA when it took "entireties funds without legal right."  (Doc. No. 1 at ¶¶ 34–37.)  Weltman filed its Answer to the Complaint on June 20, 2022 (Doc. No. 5), and one month later, moved for judgment on the pleadings (*see* Doc. Nos. 11, 13).  Weltman argues that judgment should be granted in its favor because it complied with the Pennsylvania Rules of Civil Procedure and the FDCPA.  (Doc. No. 11-1 at 1.)  The Widmers oppose that motion, arguing that material facts remain in dispute, including whether Weltman knew that the joint account was exempt before seeking a writ of execution on it.  (Doc. No. 12 at 6–7.)

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Motions for judgment on the pleadings are analyzed under the same standards as motions to dismiss.  *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019).  Judgment on the pleadings is appropriate if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)).  A dispute of fact is material if there is sufficient evidence for a reasonable factfinder to find in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When determining whether the moving party is entitled to judgment as a matter of law, the Court must view the facts in the light most favorable to the non-moving

party.  *Rosenau*, 539 F.3d at 221; *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir.

1986).

## III.    DISCUSSION

The only cause of action in the Complaint is for violations of the FDCPA.  (*See* Doc. No.

1 at 7.)  Congress enacted the FDCPA in 1977 "to address abusive debt collection practices."

*Rosenau*, 539 F.3d at 221.  It is a remedial statute that courts "construe . . . broadly so as to affect

its purpose."  *Id.* (quoting *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 453 (3d Cir. 2006)).  To

succeed on an FDCPA claim, "a plaintiff must prove that (1) she is a consumer, (2) the defendant

is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt'

as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting

to collect the debt."  *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

The first three elements are not in dispute, nor do the parties dispute that the funds in the

joint account are immune from execution because they are entireties property.  *See Klebach v.*

*Mellon Bank, N.A.*, 565 A.2d 448, 450 (Pa. Super. Ct. 1989) ("[I]f only *one* spouse is a debtor,

entireties property is immune from process, petition, levy, execution or sale."); *see also Napotnik*

*v. Equibank & Parkvale Sav. Ass'n*, 679 F.2d 316, 319 (3d Cir. 1982) ("[C]reditors of either

spouse cannot acquire by judgment an enforceable lien on entirety property, or title therein by

sale or execution.").  Instead, the parties dispute whether Weltman's decision to seek a writ of

execution without first confirming the non-exempt nature of the funds amounts to a violation of

the FDCPA.

The Widmers rely on § 1692e and § 1692f of the FDCPA.[8]  (Doc. No. 12 at 8.)  Section

1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or

---

[8] As mentioned above, *see supra* n.1, although the Complaint asserts a violation of § 1692d, the Widmers' opposition brief defends only their claims brought under § 1692e and § 1692f.  (*See* Doc. No.

means in connection with the collection of any debt." 15 U.S.C. § 1692e.  The Act provides a

nonexhaustive list of the types of communication that violate this section, including a debt

collector's "threat to take any action that cannot legally be taken or that is not intended to be

taken." *Id.* § 1692e(5); *see also id* 1692e(1)–(2) (prohibiting any "false representations" about

the debt collector's affiliation with the United States, the "character, amount, or legal status of

[the] debt," or the "compensation which may be lawfully received by any debt collector for the

collection of a debt."); *see also id.* 1692e(3)–(16) (prohibiting any "false representation or

implication" about the ramifications of nonpayment, the legal owner of the debt, or the identity

and business connections of the debt collector).

Section 1692f, by contrast, is not directed to communications, and instead, broadly

prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to

collect a debt." *Id.* § 1692f.  For example, a debt collector violates this section when it collects

an amount not authorized by the agreement creating the debt or permitted by law, *id.* § 1692f(1),

when it solicits a postdated check for the "purpose of threatening or instituting criminal

proceedings," *id.* § 1692f(3), or when it communicates "with a consumer regarding a debt by

postcard," *id.* § 1692f(7); *see also Moore v. Fein, Such, Kahn & Shepard, P.C.*, Civil Action No.

12–1157 (JLL), 2012 WL 3945539, at *5 (D.N.J. June 13, 2012) ("The FDCPA thus generally

includes as unfair practices debt collector's actions relating to invalid debts, postdated checks,

collect calls, the use of post cards, and the use of symbols other than the collection company's

---

12 at 8.)  Accordingly, the Widmers waived their claim under § 1692d, and Court discusses only § 1692e
and § 1692f in this Memorandum.  *See, e.g.*, *Ghoubrial v. Johanns*, Civil Action No. 05-CV-04256, 2006
WL 8459472, at *2 n.6 (E.D. Pa. Sept. 29, 2006) ("[P]laintiff filed a response but did not address the
sovereign immunity argument made by the United States.  The motion to dismiss by the United States
could, therefore, be granted as uncontested."); *Bowser v. Bogdanovic*, No. 08-cv-847, 2010 WL 1462548,
at *5 (M.D. Pa. Apr. 9, 2010) ("We note that, as a matter of course, the Court could dismiss Plaintiffs'
claims because Plaintiffs failed to respond to the arguments for dismissal of those claims set forth in the
Defendants' Brief in Support of the instant Motion.").

name and logo.").  A debt collector may also violate § 1692f by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . the property is exempt by law from such dispossession or disablement."  *Id.* § 1692f(6)(C).

### A.      Section 1692e

The Widmers do not distinguish between § 1692e and § 1692f in their briefing, and instead, argue that Weltman violated both sections of the FDCPA when it sought a writ of execution on their joint account.  The Court questions the appropriateness of this approach given that § 1692e applies only to "false, deceptive, or misleading *representation[s]*."  15 U.S.C. § 1692e (describing unlawful *communications*) (emphasis added); *see also Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128, 131 (3d Cir. 2016) ("We consider whether the least sophisticated debtor would find a debt collector's statement deceptive or misleading, applying an objective standard.").

The Widmers have not alleged that Weltman made any false representations or communications during the collection of the debt.  Although they allege that "[i]t is [Weltman's] policy and practice to send written collection communications, in the form annexed hereto as Exhibit A, which violate the FDCPA" (Doc. No. 1 at ¶ 25), it is far from clear to which "communications" they are referring because Exhibit A contains numerous documents.  *See supra* n.5.  During oral argument, Plaintiffs' counsel clarified that the writ and the Attachments are the relevant communications.  (Draft H'rg. Tr. at 15:23–16:4.)  These documents, which comply with Pennsylvania Rule of Civil Procedure 3252(a) and the Third Circuit's opinion in *Finberg v. Sullivan*, are not "false, deceptive, or misleading communications."  *See* 634 F.2d 50, 61 (3d Cir. 1980) (declaring prior version of garnishment rules unconstitutional because they "fail to provide the prompt postseizure hearing and adjudication of claims of exemption . . . that due process requires"); *see also Hood v. Sheak & Korzun, P.C.*, No. CIV. A. 95–5378, 1997 WL

8

83732, at *4 (E.D. Pa. Feb. 26, 1997) ("But current Pennsylvania post-judgment attachment procedure is constitutional. The notice, required by law and sent to Darlene and Richard Hood met the requirements of *Finberg*; it provided particularized notice to the judgment debtor of possible exemptions and legal recourse even after a decision on the merits by a judicial officer." (citations omitted)).

The Widmers also vaguely assert that Weltman violated § 1692e of the FDCPA in its "communications to [the Widmers] that it had the right to take entireties funds from an account jointly held by spouses to satisfy an individual judgment against only one of the account holders." (Doc. No. 1 at ¶¶ 34–37.) Again, the Complaint does not identify any specific *communications* and the writ and Attachments, alone, are not equivalent to a representation by Weltman that it may "take entireties from an account jointly held by spouses." *Cf. Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128, 131 (3d Cir. 2016) ("Dixon's arguments focus almost entirely on issues he has with how the mortgage was assigned to Wells Fargo. But in the notices, Stern & Eisenberg PC did not explicitly represent anything about any procedures or technicalities of any assignment concerning the mortgage."). To the contrary, the writ expressly recognizes that garnishment of the joint account is subject to Edwin Widmer claiming an exemption. *See Gates v. MCT Grp., Inc.*, 93 F. Supp. 3d 1182, 1188–89 (S.D. Cal. Mar. 13, 2015) (considering similar procedure under California law and finding that the debt collector's "act of authorizing the San Diego County Sheriff to serve a Notice of levy on Wells Fargo" for an account containing exempt social security funds was not a "threat to take any action that cannot be taken" under § 1692e because the debtor received a copy of the "writ of execution, a list of assets exempt from levy on a judgment, and a list of current dollar amounts of those exemptions").

9

### B.      Section 1692f

That leaves the Widmers' claims under § 1692f, which unlike § 1692e, broadly prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f.  The Widmers argue that Weltman violated this section when it sought a writ of execution on their joint account because instead of "conduct[ing] discovery pursuant to the [Pennsylvania] Rules of Civil Procedure, Weltman conducted its own extra-judicial asset search and discovered [the] Wells Fargo bank accounts[9] which were immune from execution." (Doc. No. 12 at 11.)  The Widmers then reason that although "Weltman knew the accounts were immune from execution," it nevertheless "proceeded to intentionally execute on the accounts anyway."  (*Id.* at 10.)  And although Weltman had "no probable cause whatsoever to commence the garnishment proceedings against Wells Fargo," it "intentionally used the garnishment proceedings to attach assets which Weltman already knew were immune from legal process." (*Id.* at 11.)  The Court addresses each argument in turn.[10]

### 1.      Pennsylvania Rule of Civil Procedure 3117(a)

First, the Widmers argue that Weltman erred when it failed to conduct pre-execution discovery as outlined by the garnishment rules codified in the Pennsylvania Rules of Civil Procedure.[11]  The Complaint cites only Rule 3117, which allows, but importantly, *does not require*, a debt collector to conduct discovery on a debtor before seeking a writ of execution:

---

[9] Sometimes the Widmers refer to "joint accounts," and other times, to a single "joint account." (*Compare* Doc. No. 1 at ¶ 14 ("personal bank accounts held by the entireties"), *with id.* at ¶ 15 ("the joint account").)  During oral argument, Plaintiffs' counsel clarified that there were two joint accounts—one checking and one savings.  (Draft H'rg. Tr. at 16:18–23.)

[10] Because the Widmers' raised these same arguments in defense of their claim under § 1692e, the Court's conclusions in this section apply with equal force to the § 1692e claims, and thus, provide alternative grounds for dismissing those claims.

[11] Weltman disputes the Widmers' contention that it failed to comply with Rule 3117(a), and in support of its position, attaches an affidavit by Weltman employee, Michael Dougerty, Esq., as an exhibit to its motion.  (*See* Doc. No. 11-2 (attesting that Weltman sent "Interrogatories in Aid of Execution to

> Rule 3117.  Discovery in aid of execution.
>
> (a) Plaintiff at any time after judgment, before or after the issuance of a writ of execution, *may*, for purposes of discovery of assets of the defendant, take the testimony of any person, including a defendant or a garnishee, upon oral examination or written interrogatories as provided by the rules relating to Depositions and Discovery. . . .

Pa. R. Civ. P. 3117(a) (emphasis added); *see also Donaldson v. Informatica Corp.*, Civil Action No. 08–605, 2009 WL 4348819, at *10 (W.D. Pa. Nov. 30, 2009) ("It is beyond dispute that 'may' is a permissive, not mandatory, term."); *Girard Tr. Bank v. Life Ins. Co. of N.A.*, 364 A.2d 495, 499 (Pa. Super. Ct. 1976) ("[T]he normal, preferred use of the word 'may' is that it is permissible in nature . . . .").

In addition to using the permissive term "may," Rule 3117(a) also broadly allows discovery "before *or after* the issuance of a writ of execution."  Pa. R. Civ. P. 3117(a) (emphasis added).  The Court, thus, cannot find that Rule 3117(a) requires a debt collector to conduct discovery at a specific time following judgment.  *See PaineWebber, Inc. v. Devin*, 658 A.2d 409, 412 (Pa. Super. Ct. 1995) ("The language of Rule 3117 makes its broad application clear. Discovery under the rule may be pursued 'at any time after judgment, before or after the issuance of a writ of execution.'").  *Contra* Pa. R. Civ. P. 3144(a) (stating that a plaintiff may "file and serve interrogatories directed to the garnishee" *only* "at the time of issuance of the writ or thereafter").

---

Edwin on or about June 3, 2021," but he never responded).)  The affidavit, in turn, includes a copy of the interrogatories allegedly sent to Edwin Widmer.  (*Id.*)  The Court cannot consider the affidavit or the interrogatories at this early juncture in the proceedings.  *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).  Accordingly, the Court does not consider either party's arguments about fact questions raised by those documents.  (*See* Doc. No. 11-1 at 10–11; Doc. No. 12 at 6–7.)

Likewise, to the extent the Widmers argue that Weltman violated the Pennsylvania Rules of Civil Procedure by conducting an "extra-judicial asset search" that went beyond the limits of Rule 3117(a), the Court disagrees. Nowhere do the Rules suggest that the discovery permitted under Rule 3117(a) is exclusive to other forms of discovery and fact finding in the garnishment context. *See PaineWebber, Inc. v. Devin*, 658 A.2d 409, 412 (Pa. Super. Ct. 1995) ("Discovery under Rule 3117, in contrast is 'pure discovery,' intended as an *ancillary* aid in the discovery of assets." (emphasis added)); *Noris v. Jonnett*, 23 Pa. D. & C.3d 155, 159 (Pa. Ct. Comm. Pl. 1982) ("There is nothing within the language of the rules of civil procedure that would suggest that Rule 3117(a) is a limitation on the use of discovery otherwise available to the parties. Furthermore, the broad language of the discovery rules and the policy favoring discovery support the conclusion that Rule 3117 was not adopted as a limitation on discovery but rather as part of the overall procedural structure for enforcing a money judgment that would, at the very least, allow the judgment creditor to take the testimony of any person upon oral examination or written interrogatories even though the discovery rules may not permit such broad discovery.").

Accordingly, the mere failure on Weltman's part to conduct discovery under Rule 3117(a) before seeking a writ of execution, does not amount to a violation of the Pennsylvania Rules of Civil Procedure or the FDCPA.

### 2.    **Probable Cause**

Next, the Widmers argue that regardless of Pennsylvania's garnishment rules, Weltman has an independent duty to "only initiate legal process (garnishment) based upon probable cause." (Doc. No. 12 at 13.) The Widmers do not allege that Weltman lacked probable cause to garnish Edwin's property. To the contrary, the allegations in the Complaint acknowledge that Edwin defaulted on his obligation to Discover Bank, and that a judgment was obtained against

him.  (Doc. No. 1 ¶¶ 11–12.)  *See* Pa. R. Civ. P. 3102 ("[A] judgment shall be enforced by a writ of execution . . . .").

Instead, they argue that before seeking a writ of execution, Weltman needed to have probable cause that the account being garnished contained non-exempt funds, i.e., that it was *only* Edwin's property.  For this proposition, they rely on *Todd v. Weltman*, *Weinberg & Reis, Co., L.PA.*, 434 F.3d 432 (6th Cir. 2006).  In *Todd*, the Sixth Circuit discussed the common law cause of action for wrongful garnishment, which requires a showing that, among other things, the debt collector (1) lacked probable cause to initiate garnishment proceedings, and (2) acted with "legal malice, which may be inferred entirely from a lack of probable cause." 434 F.3d at 444 (quotation marks omitted); *see also id.* at 445 ("[I]f a private defendant instituted an improper garnishment action without probable cause and with malice, the plaintiff garnishee would have a cause of action at common law.").  According to the Widmers, this section in *Todd* shows that a creditor must have probable cause that the property at issue is not subject to an exemption under state or federal law.

*Todd* is distinguishable.  In that case, Ohio law required that the debt collector submit an affidavit attesting that it had probable cause to believe the account contained non-exempt funds before garnishing the account.  *Id.* at 435.  Before the collector submitted this affidavit, the debtor told it that his account contained only exempt social security funds and requested a hearing on the exemption issue.  *Id.*  The creditor, however, ignored the debtor's assertions and two weeks later, submitted an affidavit stating that it "has a reasonable basis to believe that the . . . garnishee may have property . . . of the judgment debtor *that is not exempt* under the law of this state or the United States."  *Id.* (emphasis added) (quoting Ohio Rev. Code Ann. § 2716.11).

The Sixth Circuit, referencing this affidavit, refused to find that the creditor had probable cause to initiate the garnishment proceedings:

> This Court agrees that generally, when a creditor has obtained a judgment, she may then seek garnishment; however, this general probable cause does not equate to the specific probable cause *requirement of Ohio law* that Defendant have a reasonable basis to believe that the property garnished is non-exempt. In other words, it is no answer that Plaintiff owes Defendant money, and that Plaintiff owns property; Defendant must show that it reasonably believes the garnished property is non-exempt. Moreover, *Delk* [the case on which the creditor relied] could not possibly encompass this specific form of probable cause, as it was decided well before the existence of the Ohio statutory requirement of the affidavit. While the language in *Delk* was applicable to the days when the creditor could garnish property without investigating the nature of the property, *those days are no more in Ohio.*

*Id.* at 446 (emphasis added). As this discussion shows, the holding in *Todd*, requiring a debt collector to have *specific* probable cause as to the non-exempt status of the garnished property, was explicitly tied to the Ohio statute's affidavit requirement.[12]

Pennsylvania has no such requirement, and thus, *Todd*'s specific probable cause requirement is inapplicable here. *See generally* Pa. R. Civ. P. 3252; *cf. Finberg v. Sullivan*, 634 F.2d 50, 59, 62 (3d Cir. 1980) (rejecting the debtor's argument that Pennsylvania's garnishment procedures violated due process because they did not require "a creditor's affidavit stating that the writ of execution will not cause the attachment of exempt property"). Considering the allegations in the Complaint, the Court finds that Weltman had sufficient probable cause to initiate garnishment proceedings against Edwin—even if those proceedings touched immune funds—because it had a valid judgment against him. *See Cross v. Primerica Life Ins. Corp.*,

---

[12] At oral argument, Plaintiffs' counsel argued that the Court in *Todd* "didn't rely on" Ohio's affidavit requirement. (Draft H'rg. Tr. at 15:10–13.) This is incorrect, as demonstrated by the quoted text above.

CASE NO. 3:13cv309-MCR-EMT, 2014 WL 12527701, at *3 (N.D. Fla. Feb. 11, 2014) ("Cross asserts that probable cause was lacking because Asset Acceptance received knowledge in February 2007 that Gerald Cross's income was exempt from garnishment. The Court disagrees. Under current Florida law, every person who has recovered a judgment has a right to a writ of garnishment. The creditor is not required to show the absence of an exemption prior to issuing the writ even if the debtor has informed the creditor before the garnishment is issued that funds are exempt; the debtor must claim and prove entitlement to the exemption in the garnishment action." (citations omitted)); *Delk v. Colonial Fin. Co.*, 194 N.E.2d 885, 888 (Ohio Ct. App. 1963) ("In an action for malicious prosecution, plaintiff must plead and prove by a preponderance of the evidence every essential element necessary to maintain the action including want of probable cause and malice. It is obvious that the existence of defendant's valid judgment provided complete probable cause for instituting garnishment proceedings."); *see also Todd*, 434 F.3d at 446 (referencing *Delk* and explaining that before the Ohio specific probable cause requirement, it was sufficient for a creditor to have "general probable cause"—i.e., "generally, when a creditor has obtained a judgment, she may then seek garnishment").

### 3.   <u>Knowing Execution of a Joint Account</u>

Third, the Widmers allege that Weltman violated the FDCPA when it executed on the Widmers' account despite knowing that it was joint account and thus, exempt from execution. (Doc. No. 12 at 8–9.)

A debt collector does not violate the FDCPA merely by executing on an account that holds immune or exempt assets. *See Carney v. Unifund CCR, LLC*, Civil No. 16–522 ADM/SER, 2016 WL 7115974, at *4 & n.5 (D Minn. Dec. 6, 2016) (refusing to find an FDCPA claim where the only remaining allegation in the complaint was that the debt collector "attempted to garnish exempt funds"); *Cruz v. Hiday & Rick, P.A.*, Case No. 17-62193-CIV-

DIMITROULEAS, 2018 WL 6261844, at *2 (S.D. Fla. Sept. 27, 2018) (granting summary judgment in creditor's favor on FDCPA claim where the creditor "obtained a writ of garnishment against a bank account held jointly by" the debtor and the debtor's husband, because the creditor notified the husband of the garnishment as required by Florida law and "was neither deceptive nor unconscionable within the meaning of the FDCPA"); *Beler v. Blatt, Hasenmiller, Leibsker, Moore, LLC*, No. 05-3059, 2006 WL 1423118, at *4 (C.D. Ill. May 18, 2006) ("Beler is effectively asking this Court to hold that a debt collector commits a prima facie violation of the FDCPA if he engages in any collection efforts that temporarily interfere with a debtor's exempt assets.  The Court will not so hold."); *see also Lind v. Midland Funding, LLC*, 688 F.3d 402, 409 (8th Cir. 2012) (affirming district court's dismissal of FDCPA claim involving garnishment of debtor's joint bank account with his wife because the plaintiffs "alleged no specific facts that demonstrate [FDCPA] violations other than stating that defendants seized funds from [the wife] for a debt she did not owe"); *Johnson v. Riverwalk Holdings, Ltd.*, Civil Action No. 12–cv–00427–WYD–GJR, 2012 WL 6012745, at *2 (D. Colo. Nov. 30, 2012) ("[I]t is not an FDCPA violation to garnish a bank account held jointly by the debtor and another.").

Some courts have, however, found that a debt collector violates the FDCPA when it *knowingly* executes on exempt assets.  That is the view the Widmers ask the Court to adopt here. In support of that argument, they primarily rely on two out-of-circuit cases, *Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F. Supp. 2d 903 (S.D. Ohio 2004)[13] and *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043 (S.D. Iowa 2007).  (Doc. No. 12 at 10–11.)  Weltman argues that its actions in this case, which conformed with the Pennsylvania garnishment rules,

---

[13] In this section, the Court discusses the district court's opinion in *Todd*, whereas the prior section focused on the Sixth Circuit's opinion in that case.

are distinguishable from those at issue in *Todd* and *Hogue*.  (Doc. No. 13 at 3.)  The Court agrees

that *Todd* and *Hogue*, which turn on Ohio and Iowa law respectively, are distinguishable.

      First in *Todd*, the District Court for the Southern District of Ohio looked to Ohio's

garnishment statute which, as discussed above, places the burden of determining whether assets

are open to garnishment on debt collectors.  348 F. Supp. 2d at 907; Ohio Rev. Code Ann.

§ 2716.11 (West 2008).  Before pursuing garnishment in Ohio, a creditor/debt collector must file

an affidavit attesting that it has "good reason to believe . . . that the person named in the affidavit

as the garnishee has property . . . that is not exempt under the law of this State or the United

States."  *Todd*, 348 F. Supp. 2d at 907; Ohio Rev. Code Ann. § 2716.11 (West 2008).  In *Todd*,

the debt collector argued that it complied with these provisions by filing an affidavit before

initiating garnishment proceedings.  *Todd*, 348 F. Supp. 2d at 907.  The debtors responded that

the collector filed "affidavits in aid of garnishment with no factual basis for a belief that

Plaintiffs' bank accounts contained non-exempt assets."  *Id.* at 909.  Accepting this allegation as

true, the district court refused to dismiss the FDCPA claim, explaining that the affidavit, if false,

could amount to a "false, deceptive of misleading representation [made] in the collection of a

debt," which is a violation of § 1692e.  *Id.* at 914.  Likewise, the court found that submitting a

false or unsupported affidavit in this context "could easily meet the ordinary definition of

'unfair'" and thus give rise to a § 1692f claim.  *Id.* at 915.

      Unlike the debtor in *Todd*, the Widmers have not alleged that Weltman affirmatively

represented that the Widmers' account contained non-exempt funds.  And, as discussed above,

Pennsylvania, unlike Ohio, requires no such representation.  *See generally* Pa. R. Civ. P. 3252;

*cf. Finberg v. Sullivan*, 634 F.2d 50, 59, 62 (3d Cir. 1980).  To the contrary, Pennsylvania's

garnishment procedures, which control in this case, place the burden of asserting an exemption

on the debtor.  *See* Pa. R. Civ. P. 3252 (requiring every writ of execution to include a notice to

the debtor that explains certain exemptions "may be applicable to you [the debtor]" and that "[i]f

you [the debtor] have an exemption, you [the debtor] should do the following promptly: (1) Fill

out the attached claim form and demand for a prompt hearing. (2) Deliver the form or mail it to

the Sheriff's Office at the address noted"); Pa. R. Civ. P. 3121(a)(4) ("Execution shall be stayed

as to all or any part of the property of the [debtor] . . . *upon a showing* of exemption or immunity

of property from execution" (emphasis added)); *Zhang v. Haven-Scott Assocs., Inc.*, No. CIV.A.

95–2126, 1996 WL 355344, at *13 (E.D. Pa. June 21, 1996) ("The documents sent to plaintiff by

PNC pursuant to Rule 3140, which are appended to the amended complaint, contain specific

advice about the availability of a $300 exemption and a claim form, with instructions, for filing

with the sheriff to obtain the exemption.  They also contain an admonition to plaintiff to contact

a lawyer immediately.  The Rules reasonably require no more.  A judgment debtor who receives

prompt notice is in a better position to determine when or as to what property she may wish to

claim an exemption than a garnishee, particularly one who has custody of funds insufficient to

satisfy the judgment and who cannot be expected to know if other garnishment proceedings or

exemption claims are pending."). [14, 15]

---

[14] Indeed, the Pennsylvania Supreme Court has held that the statutory exemption—which allows a debtor to claim $300 as of right—applies "only when requested by the debtor."  *Strouse v. Becker*, 44 Pa. 206, 208 (Pa. 1863) ("Let it be observed that the [statutory] exemption is to be granted only when requested by the debtor."); *see also Diehl v. Holben*, 396 Pa. 213, 217 (Pa. 1861) ("A demand or notice" that the debtor claims the statutory exemption "there must be."); *Maschke ex rel. Ehnes v. O'Brien*, 17 A.2d 923, 924 (Pa. Super. Ct. 1941) ("[I]n the case" where a creditor seeks a writ of execution on physical property worth more than the $300 statutory exemption, "*if claim for the exemption is promptly made*, the car, machine or appliance should be sold under the execution and the debtor's exemption paid to him out of the net proceeds, just as was done in the present case; and in the long run, this course will be to the advantage of the execution creditor also, for appraisers will not then be tempted to undervalue the article for the benefit of the debtor." (emphasis added)); *id.* at 925 ("Of course, the claim for exemption, whether out of personalty or realty, must in all cases be made seasonably . . . .").

[15] Courts in other states that have considered the issue have likewise held that the burden of asserting, and ultimately proving, that an exemption applies should typically fall to the debtor.  *See Savig*

To satisfy this burden, the debtor must do more than make a self-serving statement that an exemption applies.[16]  Although no court applying Pennsylvania law has addressed this precise issue, district courts considering similar laws in other states have held that creditors and debt collectors need not rely on unsubstantiated claims of exempt funds and may demand that a debtor follow statutory procedures for claiming an exemption.  *See Wetherelt v. Larsen Law Firm, PLLC*, 577 F. Supp. 2d 1128, 1133 (D. Mont. 2008) ("A debt collector who, faced with unsubstantiated claims regarding exempt funds, avails itself of lawful procedures to verify the status of those funds does not act unfairly or unconscionably."); *Shrestha v. State Credit Adjustment Bureau, Inc.*, 117 F. Supp. 2d 142, 145 (D. Conn. 2000) (holding that a debt collector did not violate the FDCPA by garnishing exempt funds because it "did not know what property was exempt until plaintiff followed the statutory procedures to claim it").

---

*v. First Nat'l Bank of Omaha*, 781 N.W.2d 335, 342–43 (Minn. 2010) (analyzing Minnesota garnishment statute and holding that "the burden of establishing net contributions to a joint account in a garnishment proceeding should be on the account holders" because (1) under the statute, "the burden of proving entitlement to an exemption is on the debtor," (2) the "wording of these statutes implies that funds are first retained by a garnishee, and a debtor is subsequently allowed to object," and (3) "[a]ll else being equal, the burden is better placed on the party with easier access to the relevant information" (quotation marks omitted)); *Hancock v. Stockmens Bank & Tr. Co.*, 739 P.2d 760, 760–61 (Wyo. 1987) ("We hold that the burden of proof was on Hancock, the party claiming the exemption, to establish the nature of the funds, and we affirm the judgment of the trial court because Hancock failed to establish the exempt nature of the funds.").

[16] During oral argument Plaintiffs' counsel argued that there is a difference between property that is "immune" from execution and property that is "exempt."  (Draft H'rg Tr. at 17:6–8; *see also id.* at 8:10–18 (arguing that "[t]here's a difference between an exemption and immunity" and comparing entireties property to social security funds).)  This is a distinction without a difference in this case. Regardless of whether entireties accounts are labeled "immune" or "exempt" from attachment, the burden remains with the debtor defendant to prove the attachment is improper.  *See* Pa. R. Civ. P. 3121(a)(4) (allowing emergency stay of execution of writ "upon a showing of exemption or immunity of property from execution"); Pa. R. Civ. P. 3142(a) ("The defenses of immunity or exemption of property from attachment or a question of jurisdiction over the garnishee may be raised by preliminary objections filed by the defendant or the garnishee."); *Jones v. McGreevy*, 270 A.3d 1, 7 n.8 (Pa. 2022) ("Rule 3142 allows a defendant or garnishee to raise the defenses of immunity or exemption of property from attachment in the form of preliminary objections.").

The Widmers urge this Court to reject the holdings in *Shrestha* and *Wetherelt* and to instead, follow the Southern District of Iowa's holding in *Hogue*.  In *Hogue*, the debtor failed to pay her credit card balance, and the credit card company assigned the debt to a collections agency, which in turn hired a law firm to collect on the debt.  494 F. Supp. 2d at 1045.  The law firm filed a petition for judgment in state court, and in response, the debtor's attorney sent the law firm a letter, explaining that the debtor's "income was exempt from collections."  *Id.* Attached to the letter was the debtor's affidavit, attesting that "her sole source of income was Social Security, and it was the only source of deposits in her bank account."  *Id.* at 1045–46. The state court ultimately entered judgment against the debtor and, despite receiving the debtor's affidavit, the firm initiated garnishment proceedings on the debtor's bank account.  *Id.* at 1046 (reasoning that garnishment was permissible because the firm had "no independent verification" that the account contained only exempt social security income).  After the local sheriff executed on the account, the debtor's lawyer sent the law firm another letter, this time attaching copies of the debtor's bank statements, which confirmed the account contained only exempt social security funds.  *Id.*  The firm then released the garnishment, and the debtor filed an action against it, arguing among other things that the law firm violated § 1692f of the FDCPA when it garnished the debtor's bank account despite knowing it contained nothing but exempt funds.  *Id.* at 1047.

In denying the firm's motion to dismiss, the Southern District of Iowa found that the law firm should have sought a debtor's examination before pursuing garnishment proceedings against an account that they knew was likely to contain only exempt funds.  *Id.* at 1050–51.  The court refused to follow *Shrestha* and similar cases, emphasizing that in this case, the firm's knowledge of exempt funds originated not from the debtor, but from an attorney, who was subject to ethical and professional obligations of honesty.  *Id.* (citing Iowa Rules of Professional

Conduct and emphasizing that "Hogue, did not merely state that her funds were exempt, nor submit an affidavit on her own stating the same without any basis—rather, Mr. Nassif, an attorney, confirmed that Hogue was 'judgment proof' *and* enclosed Hogue's sworn affidavit"). And to the extent the law firm was skeptical of the attorney's statements and the debtor's affidavit, it could have contacted her attorney to inquire further about the client's source of income. *Id.* at 1050. The court also rejected the law firm's argument that under Iowa's garnishment statute it had "no means to ascertain" the scope and location of the debtor's assets— via a debtor's examination—until after it attempted to garnish the debtor's account and the garnishment came back unsatisfied. *Id.* at 1047–48. The court found, to the contrary, that although "judgment creditors typically seek a debtor's exam after an execution against the property of a judgment debtor is returned unsatisfied," nothing in the Iowa statute "prevents a judgment creditor from filing a petition to seek a debtor's exam prior to an unsatisfied return on the garnishment." *Id.* at 1050; *see also Bray v. Cadle Co.*, Civil Action No. 4:09–cv–663, 2010 WL 4053794, at *15 (S.D. Tex. Oct. 14, 2010) (relying on *Hogue* and *Todd* because Texas law allows pre-garnishment discovery and the plaintiff alleged that "he informed Defendants by letter in 1991, and subsequently by sworn affidavit, that his bank account contained Social Security funds").

Pennsylvania, like Iowa, allows, but does not require, a creditor to pursue limited discovery into the debtor's assets before seeking a writ of execution. However, unlike the debtor in *Hogue*, the Widmers do not allege that they sent Weltman an affidavit or other independent verification of exempt funds. Indeed, the Widmers have not alleged that they made even a "self-serving" assertion that the funds in the account were exempt before Weltman served the writ of execution. Instead, they allege only that Weltman knew they had a joint account because it

performed an independent asset search.  (Doc. No. ¶ 18.)  But knowledge of a joint bank account is not equivalent to knowledge that the account contains exempt entireties funds.  *See Constitution Bank v. Olson*, 620 A.2d 1146, 1159 (Pa. 1993) ("[T]here is a sharp difference between joint estates and those held by a husband and wife." (quotation marks omitted)). Notably, many individuals have joint bank accounts with individuals who are not their spouse. Such accounts are subject to garnishment in Pennsylvania.  *See, e.g.*, *In re Larendon's Estate*, 266 A.2d 763, 766–67 (Pa. 1970) ("[S]everance of a joint tenancy may take place in the ordinary case either voluntarily or involuntarily, and it has long been the law in this Commonwealth that a sale upon execution of a judgment against one joint tenant effects an involuntary severance of the joint tenancy."); *Am. Oil Co. v. Falconer*, 8 A.2d 418, 421–22 (Pa. Super. Ct. 1939) ("The effect of the attachment execution is to sever the joint tenancy and to make William Falconer a tenant in common with his mother and sister, and the one-third of such deposit becomes liable to answer for the judgment of the plaintiff against the son. The plaintiff is entitled to a judgment against the garnishee for such sum not exceeding the one-third of the deposit as is necessary to satisfy its judgment against William Falconer.").

District courts in other jurisdictions have similarly refused to extend *Hogue* beyond the facts at issue in that case.  *See Gates v. MCT Grp., Inc.*, 93 F. Supp. 3d 1182, 1190 (S.D. Cal. Mar. 13, 2015) ("Plaintiff cites several district court cases from other circuits to support her argument, including *Bray* . . . and *Hogue* . . . .  However, both cases are factually distinguishable, originate from jurisdictions with contrasting state law garnishment procedures, and rely on questionable legal analysis.  The bottom line here is that, right or wrong, a judgment creditor has no duty under either California or federal law to investigate, much less confirm, that a judgment debtor's bank accounts contain only non-exempt funds prior to authorizing a levy on those

accounts.  It is unreasonable to conclude that a judgment creditor's failure to conduct a pre-levy

debtor's exam, when there is no legal obligation or requirement to do so, constitutes unfair or

unconscionable action.  On this record, no reasonable jury could conclude that Defendants'

conduct in authorizing a levy to be placed on Plaintiff's accounts constituted an unfair or

unconscionable means of collecting a debt.); *Wetherelt*, 577 F. Supp. 2d at 1132 (finding "the

facts of this case are more akin to those in *Shrestha* than *Hogue*," and dismissing the debtor's

§ 1692f claim where the debt collector "knew [the debtor's] bank account contained only exempt

Social Security payments based on her answer" to the complaint in the underlying case for

judgment, but the debt collector nevertheless attempted to execute on the account).  The Court

follows this line of cases and declines to extend *Hogue*'s holding to the case before us.

### 4.   Due Process

Last, the Widmers also argue that Weltman violated Heather Widmer's due process rights

when it failed to provide notice to Heather before freezing her bank account.  (Doc. No. 12 at

12.)  The Widmers do not assert due process violations anywhere in their Complaint.  (*See*

*generally* Doc. No. 1.)  To the contrary, the allegations in the Complaint relate entirely to

Weltman's knowledge that the account was immune from execution.  (*Id.*)  Nowhere do the

Widmers challenge the notice provided by Weltman or allege that Heather Widmer received

inadequate notice.  *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d

Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to

a motion to dismiss." (cleaned up)).  Because the Widmers have alleged no facts related to notice

or due process, the Court does not, at this time, consider whether the purported lack of notice can

give rise to an FDCPA claim.[17]

---

[17] As an aside, the Court notes that it is likely not enough for the Widmers to allege that Wells
Fargo notified Edwin, but not Heather, of the garnishment proceeding.  Instead, to state a due process

## IV.    CONCLUSION

In sum, Weltman was not required by Pennsylvania law or the FDCPA to conduct pre-garnishment discovery.  The burden at all times remained on the Widmers to assert the claimed exemption or immunity.  And the Widmers have not plausibly alleged that Weltman targeted their joint account despite knowing with near certainty that it contained only exempt funds.  The Widmers have failed to allege a violation of the FDCPA, and Weltman's motion for judgment on the pleadings is granted.  An appropriate Order follows.

---

claim, they would have had to allege facts tending to show that the notice provided was not "reasonably calculated" to reach Heather *and* that she did not have actual notice of the garnishment.  *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) ("Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  Here, United received *actual* notice of the filing and contents of Espinosa's plan.  This more than satisfied United's due process rights."); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *Lind v. Midland Fund., LLC*, Civil No. 11–1242 (JRT/LIB), 2011 WL 4007336, at *4 (D. Minn. Sept. 8, 2011) (dismissing due process claim against creditor and collections agency where garnishee bank notified husband, but not wife, of garnishment of joint account because (1) wife lived with husband, and thus notice to him was "reasonably calculated" to reach her, and (2) wife had "actual notice" of the garnishment and participated in garnishment proceedings); *cf. In re Paolino*, 49 B.R. 834, 836 (Bankr. E.D. Pa. 1985) ("In the case at bench the wife had actual knowledge of the pendency of the petition as evinced by the presence of her attorney in court who has sought to quash the process.  Service on the alleged husband-debtor was reasonably calculated to inform the alleged wife-debtor of the involuntary petition and the alleged wife-debtor has or had at least some nebulous connection with the alleged husband-debtor's place of business where process was served.").